**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x

**UNITED STATES OF AMERICA,**

                    **Plaintiff,**

          **-against-**                              **O6-CR-0316 (CM)**

**STEVEN RUBINSTEIN,**

                    **Defendant.**
--------------------------------------------------------x

**<u>MEMORANDUM OF LAW</u>**

                                        JEFFREY A. RABIN, ESQ.
                                        Attorney for Steven Rubinstein
                                        105 Court Street - Suite 500
                                        Brooklyn, New York 11201
                                        (718)625-2900

To :

Clerk of the Court
A.U.S.A.  Cynthia K. Dunne

## TABLE OF CONTENTS

**PAGE**

**Table of Cases**..............................................................................   3

**Statement**......................................................................................   4

**The Mandatory Minimum Sentence Contemplated in this Case**
 **Should Be Declared Unconstitutional**............................................   5

**Removing Sentencing Discretion From the Courts and Requiring Imposition**
 **of a Mandatory Sentence at the Will of The Prosecutor Violates The**
 **Separation of Powers**.....................................................................   9

**The Elimination of The Court's Ability to Make an Individualized**
 **Determination as to Mr. Rubinstein's Sentence Violates His Right To**
 **Due Process**..................................................................................   10

**Conclusion**....................................................................................   12

**Exhibit A**......................................................................................   13

# TABLE OF CASES

**PAGE**

***Burns v. United States***, 287 U.S. 216, 220, 53 S.Ct. 154, 77 L.Ed. 266 (1932)............... 11

***Harris v. United States***, 536 U.S. 545,122 S. Ct. 2406,
                 153 L. Ed. 2d 524 (2002).................................................... 6

***Mistretta v. United States***, 488 U.S. 361, 109 S. Ct. 647,  102 L. Ed 2d 714 (1989)....... 9

***United States v. Angelos***, 433 F.3d 738 (10th Cir.2006)...................................... 6

***United States v. Booker***, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed. 2d 621(2005)............. 6

***United States v. Hamilton***, 6:05-cr-157-Orl-32 JGG)........................................ 10

***United States v. Langmade***, 125 F. Supp. 2d 373 (D. Minn. 2001)................................ 11

***United States v. Pabon-Cruz***, 391 F.3d 86(2d Cir. 2004)................................ 12

***United States v. Patillo***, 817 F. Supp.839,841(C.D. Cal. 1993)........................................ 11

***United States v. Rowe***, 414 F.3d 271(2d Cir. 2005)........................................... 12

***United States v. Sidhom,***, 144 F. Supp. 2d 41(D. Mass. 2001)(Harrington, S.J.)............ 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

UNITED STATES OF AMERICA,

                Plaintiff,

       -against-                      O6-CR-0316 (CM)

STEVEN RUBINSTEIN,

                Defendant.
---------------------------------------------------------x

## **<u>MEMORANDUM OF LAW</u>**

### **STATEMENT**

     On September 11, 2006, Steven Rubinstein is scheduled to appear before this Court for the imposition of sentence. On April 10, 2006, before Magistrate Fox, Mr. Rubinstein entered a plea of guilty to a violation of Title 18 U.S.C. §2252A(a)(2)(B), under Count One of a Felony Information, and to a violation of Title 18 U.S.C. §2422(b), under Count 2 of the information. Both of these counts mandate a minimum sentence of incarceration of five years, requiring this Court to impose, at the very least, that minimum sentence even, if after evaluating the advisory guidelines and the sentencing criteria set forth in 18 U.S.C. §3553(a), the Court believed a lower sentence would be reasonable.

     In view of the fact that the prosecution, by the plea offer, has dictated the minimum sentence that can be considered in this case, Mr. Rubinstein is moving to have the statutory mandatory sentencing provisions involved in this case declared unconstitutional.

# ARGUMENT

### A. The Mandatory Minimum Sentence Contemplated in this Case Should Be Declared Unconstitutional

In testimony before the U. S. House Appropriations, Commerce, Justice, State and Judiciary Subcommittee, United States Supreme Court Justice Anthony M. Kennedy condemned mandatory minimum sentences for federal crimes stating that "I do not think judges should have their sentencing discretion controlled by a mandatory sentence.......I don't like mandatory sentences.....I think they can lead to injustice."..... "the mandatory minimum sentences enacted by Congress are, in my view unfair, unjust, and unwise." Justice Kennedy, in an address to the American Bar Association, on August 9, 2003, also criticized mandatory minimum sentencing stating that "Most of the sentencing discretion should be with the judge, not the prosecutors.", and expressly rejected the rationale behind mandatory minimum sentences. (See American Bar Association Justice Kennedy Commission, Report to the House of Delegates, Res. 121A: Recommendations on Punishment, Incarceration, and Sentencing, at 3 [Aug.2004], *available at*, http://www.abanet.org/media/kencomm/rep121a.pdf("ABA Report"). After a year of study, the Commission released four separate resolutions. For purposes of Mr. Rubinstein's case, the Commission's most important resolution called for an elimination of mandatory minimum sentences on the grounds that they are inconsistent with the notion that sentences should consider all the relevant circumstances of an offense, and that they tend to shift sentencing discretion away from courts to prosecutors.

On March 3, 2006 The Honorable Patricia M. Wald, Chief Judge, United States Court of Appeals for the District of Columbia Circuit (Retired) testified before the Inter-American Commission on Human Rights, in Washington, D.C., on behalf of the American Bar Association,

and reasserted the position of the ABA opposing mandatory minimum sentences in response to the Supreme Court's decision in **United States v. Booker**, 543 U.S. 220(2005). Judge Wald stated that "...mandatory minimums undermine judicial discretion.....Mandatory minimum sentencing regimes shift discretion from judges to prosecutors......Both the Judicial Conference and the judges of the 12 federal circuit court of appeals, on one of which I sat for 20 years, as chief judge, have adopted resolutions that oppose mandatory minimum sentencing statutes. In a formal resolution, the Judicial Conference urged Congress to 'reconsider the wisdom of mandatory minimum sentence statutes and to restructure such statutes so that the U.S. Sentencing Commission may uniformly establish guidelines for all criminal statutes to avoid unwarranted disparities from the scheme of the Sentencing Reform Act.'(Report of the Proceedings of the Judicial Conference of the United States, March 13, 1990, published in the United States Sentencing Commission, Special Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System at 90 [1991])."[1]

In **Harris v. United States**, 536 U.S. 545, 570-71 (2002), Justice Stephen Breyer sharply criticized mandatory minimums:

> "Mandatory minimum statutes are fundamentally inconsistent with....a fair, honest, and rational sentencing system through the use of Sentencing Guidelines. Unlike Guideline sentences, statutory mandatory minimums generally deny the judge the legal power to depart downward, no matter how unusual the special circumstances that call for leniency...They rarely reflect an effort to achieve proportionality - a key element of sentencing fairness that demands that the law

---

[1]See also Brief of Amici Curiae, a group consisting of 163 individuals - including United States Attorneys General, retired United States Circuit Court Judges, retired United States District Court Judges, and former United States Attorneys and other high ranking United States Department of Justice Officials' addressing The Constitutionality of Mandatory Minimum Sentences Under Federal Law, submitted in **United States v. Angelos**, 433 F.3d 738 (10th Cir.2006).

> punish a drug 'kingpin' and a 'mule' differently. They transfer power to prosecutors, who can determine sentences through the charges they decide to bring, and who thereby have reintroduced much of the sentencing disparity that Congress created Guidelines to eliminate."

United States District Court Judge John S. Martin of the Southern District of New York left the bench because, as he stated "Congress is mandating things simply because they want to show how tough they are on crime, with no sense of whether this makes sense or is meaningful." Judge Martin particularly objected to the removal of judicial discretion in cases where non-violent criminals face harsh sentences if convicted. United States District Court Judge Morris E. Lasker of the Southern District of New York, stated in 1997 before the Symposium on Sentencing Guidelines:

> "But whatever virtues the Guidelines do have, and whatever thought and effort on the part of the Commission and its staff have gone into producing a hoped-for just result, has been mangled by Congress' imposition of mandatory minimum sentences, which of course prevent the exercise of any discretion either by the Commission or the sentencing judge........Eliminate mandatory minimums, so that the informed Commission and the experienced judge who deals face to face with the offender can exercise discretion when necessary to do justice. Discretion is not a dirty word. The constitutional provision of life tenure for judges was not approved by the American people for the benefit of the judges, but to assure the people of the United States that they would be adjudged by officials uninfluenced by political considerations which might cause injustice."

A 1996 survey of more than 700 federal jurists by the Federal Judicial Center found that almost 70 percent of those questioned objected to mandatory sentencing. "As a consequence of the mandatory sentences, we (judges) know that justice is not always done," explained U.S. District Court Judge Joyce Hens Green, of the District of Columbia, "(You) cannot dispense equal justice

by playing a numbers game, judgment and discretion and common sense are essential." U.S. District Judge Spencer Letts, of the Central District of California, summed up judicial objections when he argued, "Statutory mandatory minimum sentences create injustice because the sentence is determined without looking at the particular defendant......It can make no difference whether he is a lifetime criminal or a first-time offender.....".

It is apparent that there is considerable opposition to the requirement of statutory minimum sentences, ranging from United States Supreme Court Justices, to Circuit Court Judges, to District Court Judges, to Bar Associations and beyond. To sum up the opposition, a final quote from a statement of Senator Edward M. Kennedy, at the Judiciary Committee Executive Business Meeting, in May, 2003 during which he quoted then Chief Justice Rehnquist is significant. As Senator Kennedy stated in discussing the Feeney Amendment, "Its provisions effectively strip federal judges of discretion to impose individualized sentences, and transform the longstanding sentencing guidelines system into a mandatory minimum sentencing system. As Chief Justice Rehnquist has said, they 'do serious harm to the basic structure of the sentencing guideline system and ...seriously impair the ability of courts to impose just and reasonable sentences.'".

The defendant, Steven Rubinstein, pled guilty to violating Title 18 U.S.C. §2252A(a)(2)(B), and §2422(b), under counts one and two of a felony information. Both counts carry a mandatory minimum sentence of five years imprisonment, in addition to other penalties. The determination of the statutory violations that Mr. Rubinstein was being offered, for plea purposes, was totally controlled by the prosecution precluding him from pleading to other statutory violations that did not mandate mandatory minimum sentences. The prosecution, by insisting that Mr. Rubinstein enter guilty pleas to mandatory minimum statutory violations, has dictated the minimum sentence that the

court can consider(see *Harris* at 570-71).

Mandatory minimums undermine judicial discretion. In our adversarial criminal justice system, judges are expected to take an impartial role in the resolution of cases, siding neither with the prosecution nor the defense. Mandatory minimum sentencing regimes shift discretion from judges to prosecutors, who do not have the training, incentive, or even the appropriate information to properly consider a defendant's mitigating circumstances at the initial charging stage of a case. To give prosecutors, that kind of unchecked power dangerously disturbs the balance between the parties in an adversarial system, and deprives defendants of an impartial decision maker in the all-important area of sentencing. (See testimony of the Honorable Patricia M. Wald, March 3, 2006).

**1. Removing Sentencing Discretion From the Courts and Requiring Imposition of a Mandatory Sentence at the Will of The Prosecutor Violates The Separation of Powers**

At the outset of the sentencing reform movement, the Sentencing Guidelines were challenged as delegating legislative authority to an administrative agency (the Sentencing Commission) in violation of the separation of powers doctrine. In *Mistretta v. United States*, 488 U.S. 361 (1989), the Supreme Court rejected this challenge, and upheld the constitutionality of the guidelines. It did so, in part, on the ground that the Sentencing Commission had been placed in the judiciary. Id. at 390-91. In holding the Guidelines constitutional, however the Court noted an important caveat: ".....had Congress decided to confer responsibility for promulgating sentencing guidelines on the Executive Branch, we might face the constitutional question whether Congress unconstitutionally had assigned judicial responsibilities to the Executive or unconstitutionally had united the power to prosecute and the power to sentence within one Branch."(*Mistretta*, footnote 17, page 391).

The constitutional questions the Court envisioned in *Mistretta* are now ripe. Specifically, since *Mistretta*, the statutory requirement of mandatory minimum sentences, for violations of the

child pornography statutes, has united the power of the prosecution and that of sentencing within the Executive Branch. This has resulted because it is the Executive Branch, through the Department of Justice, that dictates to the court (The Judiciary Branch), the minimum sentence that can be considered in certain child pornography cases by its charging policy. This case, which requires the imposition of a mandatory minimum sentence of five years incarceration, regardless of any sentencing determination made by the court after considering the 18 U.S.C. §3553(a) criteria, is yet another example of the Executive Branch usurping the Court's sentencing authority. Because more than 95 percent of all criminal prosecutions result in a guilty plea, sentencing is the most significant role played by the judiciary in the administration of our criminal justice system. Reducing the Court's role in sentencing to that of merely rubber stamping the will of Congress as interpreted by the Executive Branch sabotages one of the essential checks and balances envisioned by our founders (see ***United States v. Hamilton***, 6:05-cr-157-Orl-32 JGG [see Exhibit A]), Middle District of Florida, March 16, 2006)(see attached copy). The prosecutor, representing the Executive Branch, chose what charges to file, and by doing so has decided to limit the sentencing authority of this Court. This violates the separation of powers doctrine as contemplated by the Supreme Court in ***Mistretta***, and therefore the requirement of the imposition of a mandatory minimum sentence, in the case of Mr. Rubinstein, should be ruled unconstitutional.

### 2. The Elimination of The Court's Ability to Make an Individualized Determination as to Mr. Rubinstein's Sentence Violates His Right To Due Process

Just sentencing has traditionally contemplated an individualized consideration of the circumstances in each case. "It is necessary to individualize each case, to give that careful, humane, and comprehensive consideration to the particular situation of each offender which would be possible only in the exercise of a broad discretion." (***Burns v. United States***, 287 U.S. 216, 220

[1932]). "The fair method of sentencing is for an impartial judge, who is fully cognizant of an individual defendant's personal character, family responsibilities, medical and mental condition, criminal record, and the particular circumstances surrounding the crime, to impose sentence after deep reflection, informed by the judge's experience in life and in the law." (***United States v. Sidhom,***, 144 F. Supp. 2d 41- 42 [D. Mass. 2001][Harrington, S.J.]).

Mandatory minimum sentences remove the core elements of just sentencing from the Court's consideration. The fact that the Court is limited in its consideration of all the appropriate §3553 matters prevents Mr. Rubinstein from receiving the individualized sentencing determination to which he is constitutionally entitled. The requirement of a mandatory minimum sentence violates Mr. Rubinstein's right to due process, and it should not be considered (see ***United States v. Patillo***, 817 F. Supp.839,841[C.D. Cal. 1993]; ***United States v. Langmade***, 125 F. Supp. 2d 373, 374-75 [D. Minn. 2001].

An example of the impact of mandatory minimum sentences can be found in the sentencing of Larry Rowe in the United States District Court, Southern District of New York. In that matter, Mr. Rowe was charged in a single count indictment with violating 18 U.S.C. §2251(c), in that he had downloaded over 6,000 images of child pornography, and uploaded an equal amount. After being convicted by a jury, Mr. Rowe was sentenced to 10 years in prison upon the belief by the court, and counsel, that the statute required a mandatory minimum sentence (see ***United States v. Rowe***, 03-cr-0240[CLB]). The sentencing judge stated, during the sentencing procedure, that "I think that statutory minimums generally create a problem. I think this may be a classic case where the issue of proportionality is presented.........The court believes there's a serious issue of proportionality here. [But t]he Court does not believe that it is in a position of defying the act of Congress.....".

On appeal, the Second Circuit held that, based upon the recent decision of the court in ***United States v. Pabon-Cruz***, 391 F.3d 86(2d Cir. 2004), "a violation of §2251(c), did not require imposition of a 10-year mandatory minimum sentence."(***United States v. Larry Rowe***, 414 F.3d 271, 2d Cir. 2005). On remand from the Second Circuit, Mr. Rowe was re-sentenced, on December 20, 2005, without the statutory minimum applying, to a five year period of probation, and a $10,000.00 fine.[2] In the ***Pabon-Cruz*** matter the defendant was re-sentenced, on May 27, 2005 to a period of incarceration of 48 months, a substantial reduction from the original sentence of 10 years. The significance of sentencing under a mandatory minimum requirement, or a purely discretional scheme is highlighted by these cases. The requirement that this Court be restrained by the mandatory sentencing requirements of the statutes involved in this case should not be permitted.

## CONCLUSION

In view of the aforementioned, it is respectfully requested that the statutory mandatory minimum sentencing provisions applicable to this case be declared unconstitutional.

Dated: August    , 2006                                          Respectfully submitted:

_____

JEFFREY A. RABIN

---

[2]

The advisory guideline sentence was 97-121 months.

**EXHIBIT A**

**UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA ORLANDO DIVISION**

UNITED STATES OF AMERICA

-vs-

JERMAINE HAMIL TON

157-0rl-31JGG

Case No. 6:05-cr-

**MEMORANDUM SENTENCING OPINION**

The Court held a sentencing hearing in this case on March 9, 2006, at which the Defendant, Jermaine Hamilton ("Hamilton"), and the Government presented evidence and argument. At the hearing, after briefly explaining its reasons, the Court imposed a sentence of thirty-six months, which is below the range established by the Federal Sentencing Guidelines. This Order further explains the Court's reasoning for imposing that sentence.

I.      Background

In August of 2005, a cooperating source ("CS"), at the behest of the Government, negotiated the purchase of some crack cocaine from Hamilton. Hamilton claims that he was a mere go-between or "mule" for the CS' s usual supplier. Hamilton obtained a bag containing the crack from the supplier and delivered it to the CS in exchange for $1,800. [1] Hamilton gave the money to the supplier and received $300 from him for his efforts. The bag delivered by Hamilton to the CS contained 50.9 grams of crack cocaine. One month later, Hamilton was arrested and charged with possession with intent to distribute more than fifty grams of cocaine base in violation of 2l U.S.C. sections 841 (a)(1) and 84 1 (b)(l)(A)(iii).

[1] Hamilton claims he did not know how much cocaine was in the bag.

Case 6:05-cr-00157-GAP-JGG Document 44 Filed 03/16/2006 Page 2 of 12

**II.      Analysis**

Prior to the hearing on this matter, Hamilton filed a motion for a downward departure or an adjustment to the sentencing guidelines,[2] arguing that a number of factors weighed in favor of a lenient sentence, including: (1) the nature and characteristics of this particular offense; (2) his personal history and characteristics; (3) his admission of guilt and expression of remorse; (4) his assertion that he is not a danger to the public and not a threat as a repeat offender; and (5) the allegedly unreasonable disparity between sentences for powder and crack cocaine. The Government opposed Hamilton's motion and reiterated its position that any sentence below the range established by the Guidelines is objectionable as unreasonable.[3]

A. *Booker* and the Federal Sentencing Guidelines[4]

As a result of the Supreme Court's opinion in *U.S.* v. *Booker,* 543 U.S. 220 (2005), the Federal Sentencing Guidelines became an advisory, rather than mandatory, system of sentencing. *Us.* v. *Talley,* 431 F.3d 784, 787 (lith Cir. 2005); *Us.* v. *Crawford,* 407 F.3d 1174, 1178 (lith Cir. 2005). Although a "district court need not impose the sentence suggested by the Guidelines," *Us.* v. *Gibson,*

---

[2] Construed as a motion for downward departure, this motion was denied. However, the Court considered these arguments in the context of imposing an appropriate sentence.

[3] This is not the first time the Court has commented on the Government's stubborn adherence to this position. For the Government to argue that any sentence below the Guideline range is per se unreasonable, it must also be true that a Guideline sentence is per se reasonable, which argument the Eleventh Circuit has explicitly rejected. *Us.* v. *Talley,* 431 F.3d 784,787 (l1 th Cir. 2005) ("We reject the argument of the United States that a sentence within the Guidelines range is per se reasonable").

[4] The Sentencing Guidelines were promulgated in order to reduce disparity and bring more uniformity to the sentencing process. Some have questioned whether they have achieved this objective. *See, e.g.,* AMERICAN COLLEGE OF TRIAL LAWYERS, UNITED STATES SENTENCING GUIDELINES 2004: AN EXPERIMENT THAT HAS FAILED (2004); AlbertW. *Alschuler,Disparity: The Normative and Empirical Failure of the Federal Guidelines,* 58 Stan. L. Rev. 85 (2005).

-2-

Case 6:05-cr-00157-GAP-JGG Document 44 Filed 03/16/2006 Page 3 of 12

434 F .3d 1234, 1253 (11 th Cir. 2006), it still must consult and take them into account when fashioning

sentences. *Crawford,* 407 F.3d at 1178; *see also U.S.* v. *Scott,* 426 F.3d 1324, 1330 (11 th Cir. 2005)

(describing the consultation of the Guidelines as "inescapable").

Sentencing now requires two steps: first, the district court must consult the Guidelines and

correctly calculate the range provided therein; second, the court must consider the factors listed in 18

U.S.C. section 3553(a) ("Section 3553(a)") and, after doing so, may impose a sentence that is either

more lenient or more severe than provided for by the Guidelines, as long as that sentence is

reasonable. *Talley,* 431 F.3d at 786; *Scott,* 426 F.3d at 1328-29 ("Section 3553(a) remains in effect,

and sets forth numerous factors that guide sentencing.") (internal citation and quotation omitted);

*Crawford,* 407 F.3d at 1179. Clearly, then, district courts now have discretion in fashioning an

appropriate sentence under the facts and circumstances of each case. *See U.S.* v. *Jimenez-Beltre,* ---

F.3d ----,2006 WL 562154 at *3 (1st Cir. Mar. 9, 2006) (district courts have discretion, *post-Booker,*

to impose non-Guidelines sentences).5

The factors the district court is to consider include:

(1) the nature and circumstances of the offense and the history and characteristics of the
defendant; (2) the need to reflect the seriousness ofthe offense, to promote respect for the
law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need
to protect the public; (5) the need to provide the defendant with needed educational or
vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing
Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the
need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to
victims

5 Because neither the Guidelines nor the policies on which they are based are mandatory, a district
judge may therefore disagree with those policies and instead "apply his own perceptions of just punishment,
deterrence, and protection of the public even when these differ from the perceptions of the Commission
members who drew up the Guidelines." *Booker,* 543 U.S. at 305 and n.3 *(Scalia, J., dissenting); see also
id.* at 300-301 *(Stephens, J, dissenting)* (noting that *Booker* decision instituted a discretionary sentencing
regime).

.

*Talley,* 431 F.3d at 786; *see also* 18 U.S.C. § 3553(a). In fashioning a sentence, a district court need

not engage in a detailed step-by-step analysis of the Section 3553(a) factors, nor must it even discuss

each of those factors. *U.S.* v. *Lockhart,* 2006 WL 318765 at *2 (11 th Cir. Feb. 13,2006); *Williams,*

435 F.3d at 1353-54; *Scott,* 426 F.3d at 1329. Instead, it is sufficient for a court to acknowledge that

it has considered the relevant arguments and the factors set forth in Section 3553(a). *Scott,* 426 F.3d

at 1330; *Talley,* 431 F.3d at 786. In deviating from the Guidelines, however, a district court must set

out its reasons for doing so. *Gibson,* 434 F.3d at 1254 n.37; 18 U.S.C. § 3553(c).

    B. Hamilton's Advisory Guidelines Sentence[6]

    In this case, the Guidelines advise the imposition of a sentence of between seventy and eighty-

seven months.[7] This calculation is made as follows: (1) the base offense level for possession of more

than fifty grams of crack cocaine is 32; (2) Hamilton qualified for the "safety valve" exception to the

statutory mandatory minimum and for a two-level reduction (under Guideline §§ 5Cl.2 and

2D 1.1 (b )(7)), bringing him to an offense level of 30; (3) Hamilton qualified for a three-level reduction

for acceptance of responsibility, thus arriving at a final offense level of 27; and (4) Hamilton has a

criminal history category of !. Thus, Hamilton faces a Guideline sentence of roughly between six and

seven years.

---

[6] Under 21 U.S.C. § 841(b)(1)(A)(iii), the mandatory minimum sentence applicable to the offense
with which Hamilton was charged is ten years, with a maximum of life in prison. However, Hamilton
qualified for the safety valve, i.e., a sentence imposed without regard to the statutory mandatory minimum.
*See* 18 U.S.c. § 3553(f); *see also* USSG §§ 5Cl.2, 2Dl.1(b)(7).

[7] The Court addresses this factor first, pursuant to the law of this Circuit. In addition, Section
3553(a)(4) directs the Court to consider the sentence advised by the Guidelines.

C. Applying the Section 3553(a) Factors

*1) Section 3553(a)(1)*

Section 3553(a)(1) directs the Court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). In this case, Hamilton acted as a runner in a single drug transaction involving 50.9 grams of crack cocaine. [8] Although he was aware that he was engaged in a drug transaction, he was unaware of the amount of drugs involved. Hamilton has only one prior criminal offense.[9] There is no indication of any violence in his past, nor that he has a tendency toward violence.

Hamilton (28 years old) is a frail individual, standing 5'3" tall and weighing only 103 pounds. He has a congenital heart defect which has required multiple heart surgeries since age 8, and he still suffers chest pains as a result. (Pre-Sentence Report, ~ 31). He lives with his paramour, with whom he has three children, and both he and his paramour are gainfully employed and work to support their family. A lengthy sentence for a single, atypical, relatively minor offense would severely disrupt what is, by all appearances, a solid and productive family situation. [10] In the Court's judgment, these factors weigh heavily in favor of leniency.

*2) Section 3553(a)(2)(A)*

Under Section 3553(a)(2)(A), the Court considers the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the

[8] It is notable that it was the Government that selected the amount of cocaine for this transaction. It was probably no coincidence that the amount of crack involved exceeded (just barely) the fifty gram threshold for the harsher sentences imposed under 21 V.S.C. § 84l(b)(1)(A). Many commentators have recognized that the Sentencing Guidelines did not restrict judicial discretion so much as transfer it to federal prosecutors, agents, and investigators, who retain near-complete discretion regarding, for example, the quantities of contraband to be purchased in a sting or the charges to be brought against a particular defendant. *See, e.g.,* Gerald W. Heaney, *The Reality of Guidelines Sentencing: No End to Disparity,* 28 Am. Crim. L. Rev. 161 (1991); *and* Jeffrey L. Fisher, Comment, *When Discretion Leads to Distortion: Recognizing Pre-Arrest Sentence Manipulation Claims Under the Federal Sentencing Guidelines,* 94 Mich. L. Rev. 2385 (1996); *and* Albert W. Alschuler, *Disparity: The Normative and Empirical Failure of the Federal Guidelines,* 58 Stan. L. Rev. 85 (2005).

[9] Over ten years ago, Hamilton pled *nolo contendere* to a drug possession charge and received a sentence of probation.

Case 6:05-cr-00157-GAP-JGG Document 44 Filed 03/16/2006 Page 6 of 12

offense." 18 U.S.C. § 3553(a)(2)(A). These concepts lend themselves to subjective interpretation. There are two basic considerations at issue here: first, the disparity in sentences between crack and powder cocaine; and, second, an application of the Section 3553( a)(2)(A) factors to the circumstances of this case.

The chemical compound $C_{17}H_{21}NO_4$ occurs naturally in the coca leaf. This compound is usually processed for importation into the United States by dissolving the cocaine base in hydrochloric acid and water to create a salt: cocaine hydrochloride, $C_{17}H_{22}ClNO_4$ (powder cocaine). Powder cocaine may then be converted back to its base form by cooking it with baking soda and water. *See U.S. v. Sloan,* 97 F.3d 1378, 1381-82 (lith Cir. 1996). In numerous trials before this Court, the Government's forensic chemists have testified that powder and crack cocaine are the same chemical substance, just in a different form.

Yet, there is a radical disparity in the fashioning of sentences imposed upon those defendants found guilty of crack cocaine offenses and those imposed upon defendants guilty of powder cocaine offenses. For example, there is the "100 to1" powder to crack ratio, pursuant to which a defendant who has a certain quantity of crack will receive the same mandatory minimum sentence as a defendant who has one hundred times that amount of powder cocaine. *See* 21 U.S.C. §§ 841(b)(1)(A), (b)(l)(B) (mandatory minimum sentences often and five years, respectively, imposed upon defendants for five kilograms of powder or fifty grams of crack cocaine (under (b)(l )(A)), and five hundred grams of powder or five grams of crack cocaine (under (b)( 1 )(B)). The Guidelines have incorporated this ratio, so that five kilograms of powder cocaine and fifty grams of crack cocaine are both scored at the same level.

[10]Numerous members of Hamilton's extended family appeared in support of him at the sentencing hearing.

-6-

Case 6:05-cr-00157-GAP-JGG Document 44 Filed 03/16/2006 Page 7 of 12

       This disparity has been widely criticized, and the United States Sentencing Commission itself has repeatedly suggested that a 20: 1 ratio would be more appropriate. 1[1] United States Sentencing Commission, "Fifteen Years of Guidelines Sentencing," 131-32 (Nov. 2004), *available at* http://www.ussc.gov/15yearIl5year.htm. The Sentencing Commission has also reported that many of the rationales originally relied upon to produce the disparity between powder and crack cocaine are unsupportable,12 because: (l) the harms associated with crack do not justify a substantially harsher treatment; (2) the increased addictiveness of crack results not from a pharmacological difference between it and powder cocaine, but from the differing manners in which the two drugs are normally used;13 (3) the harms associated with crack are not as severe as initially feared and no more serious than those harms resulting from exposure to powder cocaine; (4) larger percentages of the defendants subject to the increased penalties do not fit the mold of serious or high-level traffickers that Congress intended to target when initially establishing those penalties, and instead, most crack cocaine offenders receiving these harsh penalties are low-level offenders; (5) crack cocaine is the only drug for which

     11 The Sentencing Commission at one time suggested applying a 1: 1 ratio, a suggestion that Congress rejected. *See Us.* v. *Sloan,* 97 F.3d 1378, 1383 (l1th Cir. 1996). There is no indication that Congress has considered the Commission's 20: 1 suggestion, and a number of courts have applied this ratio in fashioning sentences *post-Booker. See Us.* v. *Perry,* 389 F. Supp. 2d 278,307-308 (D.R.I. *2005); US.* v. *Smith,* 359 F. Supp. 2d 771, 781-82 (E.D. Wis. 2005.); *US.* v. *Castillo,* 2005 WL 1214280 at *5 (S.D.N.Y. May 20,2005); *Us.* v. *Clay,* 2005 WL 1076243 at *6 (E.D. Tenn. May 6, 2005) (applying variance from 100: 1 ratio). Applying a 20: 1 ratio in this case, the advisory sentence for one kilogram of powder cocaine (all other factors being equal), would fall within a range of thirtyseven and forty-six months, or almost half of the advisory sentence for Hamilton's crack cocainerelated offense.

     12 Congress amended the federal drug laws in response to growing concern over the use and abuse of crack cocaine, and relied upon a variety of rationales for doing so. *Sloan,* 97 F.3d at 1382. Those rationales include: (1) crack is more powerful and more dangerous; (2) crack has a more rapid onset of action and is more addictive; (3) crack can be sold in smaller quantities; and (4) crack is more easily available and less expensive. *US.* v. *Terry,* 60 F.3d 1541,1545 (lIth Cir. 1995); *Us.* v. *Harden,* 37 F.3d 595,602 (11th Cir. 1994); *Us.* v. *Byse,* 28 F.3d 1165, 1169 (lith Cir. 1994).

-7-

Case 6:05-cr-00157 -GAP-JGG Document 44 Filed 03/16/2006 Page 8 of 12

such harsh penalties are imposed on low-level offenders; and (6) high penalties for relatively small

amounts of crack cocaine divert federal resources away from high-level traffickers toward low-level

dealers.[14] *Id.* at 132. Finally, the crack/powder disparity results in a disparate impact along racial lines,

with black offenders suffering significantly harsher penalties.[15] *Id.*

   This arbitrary and discriminatory disparity between powder and crack cocaine implicates the

Section 3553(a)(2)(A) factors. Unless one assumes the penalties for powder cocaine are vastly too

low, then the far-higher penalties for crack are at odds with the seriousness of the offense. The

absence of a logical rationale for such a disparity and its disproportionate impact on one historically

disfavored race promotes disrespect for the law and suggests that the resulting sentences are unjust. 16

Accordingly, these statutory factors weigh heavily against the imposition of a Guidelines sentence.

   Moreover, given the isolated nature of this event and the lack of evidence suggesting that

Hamilton is engaged in the drug trade beyond this case,17 the amount of cocaine involved, and the

amount of money he received, Hamilton stands on the lowest tier of the cocaine offender hierarchy.

The Court simply cannot in good conscience find that sentencing Hamilton in strict accordance with

the Guidelines under these circumstances would either reflect the seriousness of his offense or justly

punish him for it. 18 A Guideline sentence would, instead, contribute to the disrespect in which many

observers hold the federal drug and sentencing laws. These factors convince the Court that a more

lenient sentence than the one advised by the Guidelines is warranted.


   13 Powder cocaine that is smoked is equally as addictive as crack, and injected powder cocaine is
more addictive and more harmful than crack. United States Sentencing Commission, "Fifteen Years of
Guidelines Sentencing," 131-32 (Nov. 2004), *available at* http://www.ussc.gov/15_year/15year.htm.

   14 Congress' effort to reduce the trafficking of crack cocaine by imposing draconian penalties has
clearly not worked. In theory, the increased penalties and imprisonment imposed on crack dealers should
limit the supply and increase the cost of crack cocaine relative to powder cocaine. But, as the Government
concedes, crack remains relatively inexpensive, even though it is derived from powder.

   [15] Generally, powder cocaine is the drug of choice for white Americans, while crack is favored by
black Americans. Hamilton is black.

*3) Sections 3553(a)(2)(B)-(D)*

The remaining pertinent factors include the need for the sentence to adequately deter criminal conduct, to protect the public from further crimes committed by the defendant, and to provide the defendant with the necessary training, care and treatment. 19 *See* 18 U.S.C. §§ 3553( a)(2)(B), (C), (D). Clearly Congress has determined that deterrence for this type of offense is to be accomplished through the incarceration of offenders. *See* 21 US.c. § 84l(b). The issue, therefore, is what amount of deterrence is necessary *in this case*. Hamilton testified, credibly so in the Court's opinion, that he was profoundly sorry for his actions, he has learned his lesson, and would not make the same mistake again. Thus, while a substantial term of incarceration is warranted as a deterrent to Hamilton and others, three years is ample under the circumstances. Further, although the Court doubts that the public requires much, if any, protection from Hamilton, incarceration will serve the purpose of removing Hamilton from the streets so that he will be unable to commit any similar offense (assuming he were so inclined) while incarcerated. Finally, while incarcerated, Hamilton will be able to avail himself of the various educational and vocational programs offered by the Bureau of Prisons. Thus, while incarceration is clearly justified, the Court finds that these goals are met by an incarceration of a lesser duration than that suggested by the Guidelines.

16 It is notable that, under the Guidelines, if crack were treated as the same chemical substance as powder cocaine (which it is), a 1: 1 ratio would result in a sentencing range of only eight to fourteen months.

17 There was a suggestion at the sentencing hearing that Hamilton was involved in other cocaine transactions, but there is no mention of such activity in the pre-sentence report; thus the Court places no weight on that suggestion.

18 At the hearing on this matter, the Government stated that if the Court were to impose a sentence of only a few days below the Guidelines range, the Government would object (and, presumably, would list this case in its secret file on judges who impose sentences below the Guideline range, *see U.S. v. Williams,* 372 F. Supp. 2d 1338 n.7 (M.D. Fla. 2005)).

19 Several of the Section 3553(a) factors are not pertinent to this case, such as avoiding unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)), and the need to provide restitution to

-9-

### III.    Conclusion

Congress, of course, has the responsibility to proscribe criminal conduct and establish the sentencing range for those who commit crimes against the United States. Congress has also enumerated the factors which the Court must take into account when imposing sentence. But the imposition of an appropriate sentence is a judicial function. It is the Court that is called upon to make the hard decisions necessary to integrate Congressional mandates with the requirements of justice,[2]* based on the facts and circumstances of each case that comes before it. This requires the Court to exercise its discretion in consideration of all the statutory factors, not just the Guidelines.

But, notwithstanding *Booker* and recent Eleventh Circuit authority, the Government seeks to limit the Court's discretion to a consideration of the Guidelines only, ignoring the other sentencing factors. In so doing, the Executive Branch oversteps the bounds of its Constitutional authority, by attempting to usurp the Court's traditional role in the sentencing process.

Attacks such as this on the independence of the judiciary are not new. In his seminal work, "Democracy in America," Alexis DeTocqueville noted a tendency to diminish judicial authority in the United States. He predicted that such attacks, if successful, would be attended with "fatal consequences," and predicted that "it will be found out at some future period that by thus lessening the independence of the judiciary they have attacked not only the judicial power, but the democratic republic itself." Alexis DeTocqueville, DEMOCRACY IN AMERICA, Vol. I, Ch. XVI at 279 (Knopfed. 1945; Everyman's Library, 1994, Ninth Printing).

victims (18 US.c. § 3553(a)(7)), and thus the Court does not consider them here. Further, inasmuch as the only type of sentence available in this case is incarceration, the Court does not address 18 US.C. section 3553(a)(3) ("the kinds of sentences available").

20 As stated in The Federalist Number 51: "Justice is the end of government. It is the end of civil society. It ever has been and ever will be pursued until it be obtained, or until liberty be lost in the pursuit." THE FEDERALIST No. 51 (James Madison).

Tension between the branches of our government is a natural consequence of human nature and was seen

by our founding fathers as the foundation for the checks and balances built into our system of government.

As Madison said in Federalist Number 51, the security against a gradual concentration of the several

powers in the same department, "consists in giving to those who administer each department the necessary

constitutional means and personal motives to resist encroachments of the others." THE FEDERALIST No.

51 (James Madison). Courts must therefore be allowed to exercise appropriate discretion in fashioning a

just sentence. Absent such discretion, the Court becomes nothing more than an arm of the other two

branches of government. Because more than 95 percent of all criminal prosecutions result in a guilty plea,

sentencing

is the most significant role played by the judiciary in the administration of our criminal justice system.

Reducing the Court's role in sentencing to that of merely rubber-stamping the will of Congress as

interpreted by the Executive Branch would sabotage one of the essential checks and balances

envisioned by our founders. In short, the pursuit of justice requires the meaningful participation of

judges, lest DeTocqueville's warning come true.

There are certainly cases where a sentence within, or even above, the Guidelines would be

appropriate. This is not one of those cases. Considering all of the relevant factors, including the

sentence advised by the Guidelines, the nature of this offense, the circumstances of this case, and the

Case 6:05-cr-00157 -GAP-JGG Document 44 Filed 03/16/2006 Page 12 of 12

characteristics of the Defendant, a sentence of thirty-six months is sufficient, but not greater than

necessary, to satisfy the requirements of 18 U.S.C. § 3553.

**DATED** in Chambers in Orlando, Florida on March 16, 2006.

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office United
States Pretrial Services Office Counsel
for Defendant
Jermaine Hamilton