```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                         06 CR 316 (CM)

STEVEN RUBINSTEIN,

                Defendant.

------------------------------x
                                       New York, N.Y.
                                       April 21, 2015
                                       12:00 p.m.

Before:

                HON. COLLEEN MCMAHON,

                                       District Judge

                     APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
JENNIFER BEIDEL
     Assistant United States Attorney

WILLIAM STAMPUR
     Attorney for Defendant

ALSO PRESENT:   U.S. Probation Officer Chris Porter
```

1    THE DEPUTY CLERK:  United States of America v. Steven
2 Mark Rubinstein.  Your appearance, please.
3    MS. BEIDEL:  Good afternoon, your Honor.  Jennifer
4 Beidel for the government, along with Senior United States
5 Probation Officer Chris Porter.
6    MR. STAMPUR:  William J. Stampur for Mr. Rubinstein.
7    THE COURT:  Good afternoon.  Have a seat.  What have
8 we here?
9    MS. BEIDEL:  Your Honor, we appeared on a violation of
10 supervised release initially on March 11 to which the defendant
11 pled not guilty.  I believe that he's prepared today to plead
12 guilty to the second specification.
13    THE COURT:  Mr. Stampur, is that correct?
14    MR. STAMPUR:  That is a correct statement, your Honor.
15 Mr. Rubinstein and I have discussed the matter and I've
16 discussed it with both Mr. Porter and the assistant, and he's
17 prepared to enter a plea to the C violation, the second
18 violation that's contained on the supervised release violation.
19    THE COURT:  Okay.
20    So, Mr. Rubinstein, this is not a trial.  You can have
21 a seat, Mr. Stampur.  It is not a trial.  We are going to have
22 a hearing.  I am going to ask you questions under oath.  I have
23 to satisfy myself that you are fully aware of your rights and
24 that you are waiving them knowingly and voluntarily.  If at the
25 end of this proceeding you ultimately decide to enter a plea of

1  guilty, you have counsel with you, and you have a right to talk
2  to your lawyer at any time during the course of these
3  proceedings.
4          Do you understand that, sir?
5          THE DEFENDANT:  Yes, I do.
6          THE COURT:  Okay.  Would you please swear
7  Mr. Rubinstein.
8          (Defendant sworn)
9          THE COURT:  Have a seat, sir.  I remind you that if
10 you knowingly make a false statement to me during these
11 proceedings, you can be prosecuted for the crime of perjury.
12 And any punishment for your perjury, which could include as
13 much as five years in jail or a $250,000 fine, would be
14 separate and apart from the disposition of the matter that we
15 are going to discuss today.
16         What is your full name, sir?
17         THE DEFENDANT:  Steven Mark Rubinstein.
18         THE COURT:  That's Steven with a V?
19         THE DEFENDANT:  Yes, it is.
20         THE COURT:  Thank you, sir.  How old are you?
21         THE DEFENDANT:  58.
22         THE COURT:  What was your highest level of education?
23         THE DEFENDANT:  Master's degree.
24         THE COURT:  Okay.  Have you ever been hospitalized for
25 narcotics or alcohol addiction?

1       THE DEFENDANT:  No, I have not.

2       THE COURT:  Are you on any kind of drugs or medication
3  today that are affecting your ability to concentrate or to
4  understand what's going on here in the courtroom?

5       THE DEFENDANT:  I am not under any sort of medication.

6       THE COURT:  So, it is my understanding that you are
7  going to change your plea on Specification Number Two which
8  charges that on or about March 4, 2015, you failed to follow
9  the instructions of your probation officer in that you obtained
10 two unauthorized portable electronic devices capable of
11 accessing the Internet which were unknown to your probation
12 officer and which were not monitored.  That is what we call a
13 grade C condition of supervision.  A grade C condition.

14      I can revoke your term of supervision, I can sentence
15 you to as long as three years, three additional years in
16 prison.  There is a guideline for this particular offense of
17 from three to nine months.  I'm not bound by the guideline.  I
18 have discretion to sentence you to anything from no time at all
19 to as much as three years.  If I sentence you to less than
20 three years, I can revoke your term of supervised release and I
21 can impose a new term of supervised release of up to five
22 years, less any period of time that I sentence you to spend in
23 jail.

24      So that's what can happen to you if you decide to take
25 a plea to Specification Number Two.  Do you understand, sir?

1       THE DEFENDANT:  Yes, I do.

2       THE COURT:  Do you understand that you do not have to

3  plead guilty to Specification Number Two, or any of the

4  specifications, and you can have a hearing, at which the

5  government will be required to prove to my satisfaction, I will

6  be the trier of fact, by a preponderance of the evidence that

7  you have in fact violated the terms of your supervised release.

8       THE DEFENDANT:  I understand, your Honor.

9       THE COURT:  Do you understand that at that hearing you

10 would have the right to the assistance of counsel?

11      THE DEFENDANT:  I understand as well.

12      THE COURT:  Do you understand that at that hearing you

13 would have the right to confront and cross-examine any

14 witnesses that the government calls to testify against you?

15      THE DEFENDANT:  I understand.

16      THE COURT:  Do you understand that you would have the

17 right to challenge the admissibility of any exhibits that the

18 government chooses to introduce?

19      THE DEFENDANT:  I understand that.

20      THE COURT:  Do you understand that you would have the

21 right to call witnesses to testify on your own behalf, and to

22 have this Court issue subpoenas if they didn't want to come and

23 testify voluntarily?

24      THE DEFENDANT:  I understand.

25      THE COURT:  Do you understand that you would have the

1  right to take the witness stand and testify yourself, but that
2  no one could force you to do so, and I could draw and would
3  draw no adverse inference against you if you decided to remain
4  silent?
5           THE DEFENDANT:  I understand that.
6           THE COURT:  Do you understand that if you plead guilty
7  to Specification Number Two, you will be giving up all of the
8  rights I have just enumerated, except for your right to
9  counsel?
10          THE DEFENDANT:  I understand that.
11          THE COURT:  Has anyone threatened you or coerced you
12 or exerted any kind of improper pressure on you to get you to
13 change your plea on Count Two?
14          THE DEFENDANT:  No, your Honor.
15          THE COURT:  Has anyone promised you what sentence I am
16 going to impose upon you?
17          THE DEFENDANT:  No, your Honor.
18          THE COURT:  The Court states there were no such
19 promises.
20          What is the government prepared to prove if we go to
21 hearing?
22          MS. BEIDEL:  Your Honor, the government is prepared to
23 prove that on the morning of March 4, 2015, the probation
24 office visited the defendant's apartment and found him there
25 with two unauthorized devices, one of which he was concealing

1  by sitting upon it.  They would further testify that they had
2  not authorized him to have either device.
3          THE COURT:  Devices were cell phones?  What were they?
4          MS. BEIDEL:  They were cell phones.  They were
5  Internet capable cell phones.  And the government would further
6  prove that the defendant stated that he was aware that he was
7  required to get authorization to have those devices.
8          THE COURT:  Okay.  Mr. Rubinstein, did you hear what
9  the assistant United States attorney just said to me?
10         THE DEFENDANT:  Yes, I did.
11         THE COURT:  Sir, is it still your intention to change
12  your plea on Specification Number Two from not guilty to
13  guilty?
14         THE DEFENDANT:  Yes, it is.
15         THE COURT:  Would you please tell me what you did to
16  violate the terms of your supervised release.
17         THE DEFENDANT:  I had in my possession two Internet
18  capable cell phones.
19         THE COURT:  That were not known to your probation
20  officer?
21         THE DEFENDANT:  That's correct, yes.
22         THE COURT:  Those were not being monitored?
23         THE DEFENDANT:  They were not being monitored.
24         THE COURT:  Did you know that it was a violation of
25  the terms of your supervision to have such phones?

1           THE DEFENDANT:  Yes, I did.

2           THE COURT:  Did you obtain them of your own free will?

3           THE DEFENDANT:  Yes.

4           THE COURT:  Does the government know of any reason why
5    I should not take the plea from Mr. Rubinstein?

6           MS. BEIDEL:  No, your Honor.

7           THE COURT:  Does the government need me to elicit
8    anything else from him by way of allocution?

9           MS. BEIDEL:  No, your Honor.

10          THE COURT:  Mr. Stampur, is there any reason why I
11   should not take a plea from your client?

12          MR. STAMPUR:  No.

13          THE COURT:  Is there anything else I should elicit
14   from him?

15          MR. STAMPUR:  No.

16          THE COURT:  Sir, would you please stand.

17          Steven Mark Rubinstein, how do you plead to Violation
18   Number Two, charging that on or about March 4, 2015, you failed
19   to follow the instructions of your probation officer in that
20   you obtained two unauthorized portable electronic devices
21   capable of accessing the Internet which were unknown to the
22   probation officer and were not monitored; guilty or not guilty?

23          THE DEFENDANT:  Guilty, your Honor.

24          THE COURT:  On the above allocution I find the
25   defendant perfectly competent and capable of entering an

1    informed plea. The plea is knowing and voluntarily, and the

2    defendant has allocuted to all of the elements of the

3    violation. Accordingly, I find the defendant, Steven Mark

4    Rubinstein, guilty of violation number two in the

5    specifications that were given to the Court.

6              You may be seated, sir.

7              Does the government have a position on sentencing?

8              MS. BEIDEL: Yes, your Honor. I believe that the

9    defendant is also prepared to proceed to sentencing today. The

10   government's position on sentencing is that a guidelines range

11   sentence would be appropriate. We note for the record that the

12   defendant has already served 42 days, which is about half of

13   the bottom end of the three-to-nine-month guideline range at

14   this point.

15             THE COURT: I was counting days while you were

16   talking. I should have let you just do it for me. Okay. Big

17   surprise. The government thinks a guideline sentence is

18   appropriate.

19             MS. BEIDEL: I believe the probation officer may also

20   want to speak more specifically.

21             THE COURT: I always want to hear from Mr. Porter.

22             MR. PORTER: Good afternoon, your Honor. Yes, our

23   recommendation is for a guideline sentence. We believe that

24   the conduct is serious enough to warrant that. The fact that

25   he made false statements about it, I know he's not admitting to

1    that at this time, but he took steps to deceive the probation

2    office, and that he had been prior directed to not have these

3    devices on his person. And had already been sanctioned when he

4    was in the halfway house is of great concern to us.

5         THE COURT: Okay. I gather that were a guideline

6    sentence to be imposed, you want his supervision to be

7    reimposed with modified terms?

8         MR. PORTER: That's correct, your Honor.

9         THE COURT: Okay. What modified term is it that you

10   want?

11        MR. PORTER: We laid them out --

12        THE COURT: You laid them out, but most of them are

13   standard terms.

14        MR. PORTER: Correct. Most of them are standard terms

15   back when he was sentenced. Some wording was different.

16        THE COURT: What would be new and different?

17        MR. PORTER: New and different, other than the waiver

18   that he signed, would be the GPS condition that would allow us

19   to monitor his activities and set up exclusion zones in the

20   community based on our concerns of potential risk. And the

21   other conditions that he signed the waiver for just basically a

22   rewording of computer monitoring conditions that are up-to-date

23   with today.

24        THE COURT: All right. Mr. Stampur.

25        MR. STAMPUR: If I may, Judge. I hope I can convince

1    you or attempt to convince you that my client has actually more

2    than recognized his mistakes.  If I can give you just a little

3    bit of background information.

4         I'd like to try to preface my comments by stating that

5    I want to urge the Court to consider releasing him today, and

6    giving him time served.  Or, alternatively, releasing him today

7    and let him come back to show that he is abiding by these

8    strict conditions, including the new GPS condition, which, as

9    your Honor knows, is extremely severe to the extent that they

10   will be monitoring him 24/7.

11        As some background to Mr. Rubinstein's plight.  He did

12   10 years, your Honor sentenced him to 10 years.  He did 10

13   years and never had one issue while incarcerated.  When he was

14   about to get released, he was due to get released Christmas

15   Eve.  As is often the case in these type of cases, he couldn't

16   get released because he didn't have a place to stay that was

17   secure, given the nature of the case.  So he stayed an extra --

18   he didn't get released in December or January, and finally, he

19   found a place to live in Yonkers so he got released in

20   February.  So he stayed an extra, whatever, six weeks.  And he

21   actually utilized the cell phone in helping him find a place

22   and eventually getting released.

23        So he went to this location in Yonkers.  I know the

24   probation officer knows this.  And the apartment, the one

25   bedroom apartment that everyone thought was ready for him was

1   not ready.  So, the landlord -- so he slept on an air mattress

2   for approximately five or six days, the only thing he had, in a

3   different apartment in the same building while they fixed up

4   the apartment they had promised would be ready a week earlier.

5   So that was his life.

6           He has no lifeline other than his ex-wife who lives in

7   Poughkeepsie, Dutchess.  And so he's on his own after 10 years

8   plus.  And he obtained the cell phones in violation.

9           But as we've talked about, they searched those cell

10  phones.  There was nothing related to anything like he's been

11  convicted of.  The cell phone had to do with Best Buy,

12  with Amazon, with job seeking, because he needs to get a job.

13  Those are what he was using the cell phone.  It was in

14  violation.  But, that's the things he was using to get his life

15  back in order by himself for.

16          And then when they came to his house, yes, he is in

17  violation.  And there it is.  It is not an excuse, but I just

18  want to give you some understanding of what he was trying to

19  do.  He's almost 60 years old, he's going to be 59 next week.

20  I add this because while incarcerated I met him, as your Honor

21  knows, March 11, just a couple weeks ago, his mother died while

22  he was incarcerated and wasn't even able -- I only found out a

23  week after -- to attend the funeral.  So, this is where he is

24  at the moment.

25          As your Honor knows, with the assistance of the

assistant, he has already done 42 days here in the MCC, which isn't as comfortable a place as he was at when he did these 10 years which is up in Fort Devens for him. But he's surviving, he's very careful inside there.

And I had broached with the assistant last week and relayed to her all these factors and suggested as an alternative of the government just taking the position that let's sentence him under the advisory sentencing guideline range, maybe in this instance, we could do what I suggested, which was to not make a final determination, but let him get back to Yonkers, let him follow these strict rules, let him get this GPS device installed. And with your Honor's concurrence, bring him back in two or three months, and you'll see that he's abiding by all these conditions.

The world has changed. He's been in jail for over 10 years. There are things that he did not experience 10 years ago. So he is adapting at a later age, if I may say that, in his life. He kept all the conditions of seeking counseling that he was supposed to.

In fact, Judge, I know that Mr. Porter expressed his opinion that he didn't show remorse, but he showed remorse when he spoke to his psychologist. So he has been going to counseling. And to me, that's I hope the most important thing. Because he stayed clear of any violations when it comes to what I know is the reason that the government wants to monitor him

1   for.
2          So, it is not a perfect explanation, Judge, obviously,
3   but --
4          THE COURT:  There is no perfect explanation.
5          MR. STAMPUR:  No, there is none.  I just want you to
6   get as complete a picture as I can.
7          THE COURT:  How are these individuals, in a world
8   where everything is done online, job applications, job posting,
9   how do we expect these individuals to operate?
10         MR. PORTER:  Your Honor, we do monitor computers, we
11  allow them to buy computers, we set up computer monitoring with
12  them.  We go over their activities on a weekly regular basis.
13  They are set up for key words.  If they are doing something,
14  we're immediately notified.  They're told from the beginning
15  they are not supposed to have these cell phones.
16         I will add when he was in the bureau of prisons, under
17  the umbrella of the bureau of prisons in the halfway house, he
18  did have that initial device taken from him, seized from him
19  when he was in the halfway house, and he filed the fraudulent
20  claim to get a new smart phone which is what we spoke about
21  before you last time.  So, that's a little bit of a
22  discrepancy.
23         But we would allow him to access the computer in our
24  office, we would also refer him to employment sites where he
25  could apply in the community.

1           MR. STAMPUR:  It is very difficult, Judge.  When he

2  was at the halfway house, we had this discussion.  And I don't

3  want to speak generally for other clients, but a lot of people

4  in the halfway house have cell phones who are not supposed to.

5  I think no one is supposed to have a cell phone in the halfway

6  house.  Not just someone who was convicted of the crime he was

7  convicted of.  He couldn't find a place to live.

8           THE COURT:  I hear you.  It's a bit of a conundrum,

9  and I appreciate it is a bit of a conundrum.  And I'm not quite

10  sure how to address the conundrum of balancing the community's

11  interest in protection from persons with a record like your

12  client's record.  Has he been classified as a Level 3?

13           MR. PORTER:  Not yet.  I would also add, your Honor,

14  we do now have the capability of monitoring cell phones, a

15  certain type of cell phone.

16           THE COURT:  Right.  Which means the way we balance it

17  is we require him to get permission, and permission he did not

18  get.  He's admitted he didn't get permission.  So, I appreciate

19  the difficulty of navigating in the world of 2015 without a

20  cell phone.

21           MR. STAMPUR:  He's living in a new location.  He's

22  never lived in Yonkers and he wants to find a job, and that's,

23  needless to say, going to be a Herculean task, but he wants to,

24  and it is difficult.

25           So I guess what probation officer is saying in

1    Yonkers, I guess he would have to go to White Plains to try to

2    accomplish this.  I'm not sure there is a perfect solution.

3              THE COURT:  There isn't a perfect solution.  But right

4    now my job is not to solve that problem.  My job is to punish

5    him for what he did, which was to obtain the cell phone without

6    notifying his probation officer.

7              MR. STAMPUR:  Just trying to give you the mitigating

8    factors.

9              THE COURT:  Okay, Mr. Rubinstein, is there anything

10   you want to say to me in response to Mr. Porter, in response to

11   the assistant, in response to anybody?

12             THE DEFENDANT:  Yes, your Honor.  Just basically, I'm

13   not going to elaborate on what Mr. Stampur said.  He said

14   exactly what my feelings are.  I'll just rise right now to let

15   you know I'm sorry for what I did.  I accept full

16   responsibility for what I did, and I am remorseful for what I

17   did, and I ask your Honor for any sort of consideration, any

18   sort of mercy you can show me today.  Thank you.

19             THE COURT:  Okay.  Well, the consideration and mercy

20   that I am going to show is by sentencing you to time served.

21   However, I am going to accept probation's recommendation that

22   in addition to reimposing the term of five years' supervised

23   release, and that would be of course less the 42 days that you

24   have already served, I am imposing all of the original

25   conditions of supervision, plus, you have to participate in a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  computer slash Internet monitoring program administered by the
2  U.S. probation office.  You must provide your probation officer
3  advance notification -- advance, before you buy -- of any
4  computers, automated services, or connected devices that will
5  be used during the term of supervision and that can access the
6  Internet.
7          The probation office is authorized to install any
8  application necessary to survey all activity on the computer or
9  connected device owned or operated by you.  You may be required
10 to pay the cost of monitoring services in a monthly rate
11 provided by the probation office.  That's of course based on
12 your ability to pay, which you certainly don't have now.  The
13 rate and payment schedule are subject to periodic adjustment by
14 the probation office.
15         The probation office will be notified by electronic
16 transmission of impermissible or suspicious activity or
17 communications occurring on such computer or connected device
18 consistent with the computer monitoring policy in effect in the
19 probation office.  As triggered by impermissible or suspicious
20 activity, you shall consent to and cooperate with unannounced
21 examination of any computer equipment you own or used by you.
22 And that examination shall include, but is not limited to,
23 retrieval and copying of all data from the computer, connected
24 device, storage media, that includes cell phones, iPads,
25 tablets, all of those things, and any internal or external

1   peripherals.  And it may involve the removal of such equipment
2   for the purpose of conducting a more thorough inspection.
3              You are also going to be subject to a curfew while on
4   supervised release.  And while on curfew you are required to
5   return to your residence daily or as directed by your probation
6   officer.  Electronic monitoring with a GPS unit will be used to
7   monitor compliance.  You will keep the GPS unit on your person
8   at all times when outside of your residence, and you must abide
9   by detailed instructions regarding specific inclusion or
10  exclusion zones.  You will pay the cost of electronic
11  monitoring at the prevailing rate according to your ability to
12  pay as determined by your probation officer.
13             I am deeply sorry for the loss, and I am very, very
14  sorry that it occurred while you were incarcerated.  It is
15  actually that that compels me to end the incarceration now.
16             It sounds to me like with probation's new
17  capabilities, you will be able to obtain a cell phone.  But it
18  is going to be a cell phone that's known to your probation
19  officer, and that's going to be monitorable.  Just like any
20  computer that you got would be monitorable.  And that's a
21  perfectly appropriate thing to do in the circumstances.
22             You have a right to take an appeal from the sentence
23  I've imposed upon you, and you have the right to counsel in
24  connection with any appeal that you would decide to file.  If
25  you can't afford a lawyer to represent you, one would be

1   appointed without cost.
2           Do you understand?
3           THE DEFENDANT:  Yes.
4           THE COURT:  All right.  Thank you very much.
5                              o0o